UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROTECTIVE LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., as securities intermediary,<br><br>        Defendant. | C.A. No. 20-cv-2101 |

## COMPLAINT

Plaintiff, Protective Life Insurance Company ("Protective Life"), files and asserts its Complaint against Defendant, Wells Fargo Bank, N.A., ("Wells Fargo"), as securities intermediary, and in support thereof, alleges as follows:

## PARTIES

1. Protective Life is a life insurance company organized and existing under the laws of Tennessee, with its principal place of business at 2801 US-280, Birmingham, AL 35223. Protective Life is a citizen of the states of Alabama and Tennessee.

2. Upon information and belief, Wells Fargo is a national banking association with its principal place of business in Sioux Falls, South Dakota. Wells Fargo is being named solely in its capacity as securities intermediary.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Protective Life, a citizen of Tennessee and Alabama, and Wells Fargo, a citizen of South Dakota, and because the amount in controversy exceeds $75,000.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because the defendant, for venue purposes, resides in the District of Columbia.

## FACTS COMMON TO ALL CLAIMS

**A. The Application for and Issuance of a $2 Million Life Insurance Policy**

5. As early as April 2005, Empire General Life Assurance Corporation ("Empire Life") began receiving inquiries regarding a potential $2 million life insurance policy on the life of Nelson Deckelbaum.

6. On or about September 8, 2005, Empire Life received an "Application for Life Insurance" (the "Application") seeking to insure the life of Mr. Deckelbaum. A copy of the Application is attached as Exhibit A.

7. The Application sought a $5 million life insurance policy, naming The Nelson Deckelbaum 2005 Insurance Trust dated September 6, 2005 (the "Trust") as the "owner" and "beneficiary." *Id.* at 1.

8. The Application disclosed Mr. Deckelbaum's place of residence as Washington, D.C. *Id*.

9.     The Application identified the Trust as having a physical address at 1100 N. Market Street, Wilmington, DE 19890, and acting at the direction of a Delaware trustee, Wilmington Trust Company, also physically located in Delaware. *Id.* at 1, 4.

10.    The Application represented that the Policy's purpose was for Mr. Deckelbaum's "Estate Planning." *Id.* at 6.

11.    The Application was signed on September 6, 2005 in Wilmington, Delaware by Michele C. Harra, an officer of Wilmington Trust Company, as trustee of the Trust (the prospective owner); by the insured, Mr. Deckelbaum; and by two insurance brokers, Alan Meltzer and Margaret Lyon.   *Id.* at 6.

12.    The Application declared that the statements and answers in the Application were full, complete, and true to the best of the signatories' knowledge and belief. *Id.* at 4.

13.    Thus, in completing the Application, the signatories knew that they were required to provide truthful, accurate, and full responses to the questions presented.  Furthermore, they knew that Empire Life would rely upon the statements recorded on the Application in determining whether to issue a policy with the face amount requested, or whether to issue a policy at all.

14.    Soon thereafter, the application was amended seeking a face amount of $2 million.  A copy of the Amendment is attached as Exhibit B.

15. In reliance upon the representations contained in the Application and other documents and information submitted to Empire Life in connection with the Application, Empire Life issued a policy with a $2 million death benefit (policy number E00478564) (the "Policy") with an issue date of September 26, 2005.

16. In January 2007, Empire Life merged into Protective Life. Under the merger, Protective Life assumed Empire Life's insurance policies.

17. On November 30, 2007, Protective Life received and processed an ownership and beneficiary change request to change the owner and beneficiary of the Policy to an entity known as CSSEL Bare Trust with Wells Fargo Delaware Trust Company as trustee.

18. On or about February 12, 2008, Protective Life received and processed another ownership and beneficiary change request to change the owner and beneficiary of the Policy to an entity known as Life Settlement Funds Limited Trust with Bank of New York as trustee.

19. On or about April 5, 2011, Protective Life received and processed another ownership and beneficiary change request to change the owner and beneficiary of the Policy to Wells Fargo Bank, N.A., as securities intermediary. Wells Fargo is the record current owner and beneficiary of the Policy on behalf of the Policy's beneficial owner, whose identity is unknown to Protective Life.

20. Upon information and belief, Mr. Deckelbaum passed away on December 27, 2019, and Wells Fargo subsequently submitted a claim for the Policy's death benefit on behalf of its unidentified investor principal.

**B.    The Policy was Procured as Part of an Illegal Wagering Scheme to Gamble on the Life of Mr. Deckelbaum**

21. Following receipt of notice of Mr. Deckelbaum's death, Protective Life commenced a review of the Policy and has determined, on information and belief, that the Policy was at all times material hereto meant as an illegal wager on the life of Mr. Deckelbaum. Protective Life has further determined, on information and belief, that the Policy lacked an insurable interest prior to and at its inception and that any appearance of insurable interest was superficial only and was in reality a complete and total sham designed to conceal the true wagering nature of the purported Policy.

22. Protective Life has further determined, upon information and belief, that the Trust itself was an illegal sham created to give the false appearance of a valid insurance trust established for valid "Estate Planning," and thus to give the superficial—but entirely false—appearance of a legitimate insurable interest.

23. Moreover, upon information and belief, the funds used to pay the premiums on the Policy were provided—not by Mr. Decklebaum or his family—but rather by a third party investor known as Coventry, a stranger originated life insurance ("STOLI") funder that used insureds during the relevant time periods as

5

instrumentalities to create multi-million dollar life insurance policies—not for the benefit of the insureds or their families—but rather for the benefit of investors. Upon information and belief, Coventry or a Coventry-related entity and/or other persons or entities who lacked an insurable interest in Mr. Deckelbaum's life and were participating in a wager on his life and sought to profit from his death. Upon information and belief, persons who coordinated and associated with Coventry in procuring the Policy include Ms. Lyon, one of the soliciting agents who signed the Application, and her firm CBI Financial.

24. Upon information and belief, to disguise the true wagering nature of the Policy, the stranger entities, acting together to generate the Policy, knowingly and intentionally misrepresented material information and affirmatively concealed material information from Protective Life so as to intentionally mislead and induce Protective Life into issuing a policy that it otherwise would have rejected. Upon information and belief, and among other things, this included:

a. Falsely representing that the Trust was established for a legitimate purpose. Instead, upon information and belief, the Trust was established solely for the purpose of making an illegal wager on the life of Mr. Deckelbaum in violation of applicable Delaware law. The Trust furthered this unlawful scheme by (1) giving the appearance of a valid Delaware statutory trust and (2) acting as the owner and beneficiary of the Policy so as to conceal that the real owner in

interest, the real beneficiary in interest, and the real payor of premiums was a stranger to Mr. Deckelbaum. In reality, the Trust was a sham, and the stranger entities acting together to generate the Policy concealed the truth from Protective Life.

b. Upon information and belief, the premiums were paid by Coventry and its associates pursuant to the terms of a non-recourse premium financing agreement. Upon information and belief, at no point did the Trust or Mr. Deckelbaum provide any of the ultimate funding for the premium payments, and this fact was intentionally withheld from Protective Life.

c. Falsely declaring in the Application that the Policy would be used for Mr. Deckelbaum's "Estate Planning." In fact, the Policy was never meant to serve as "Estate Planning" for Mr. Deckelbaum but was always intended to benefit stranger-investors who sought to use the Policy as an instrumentality to illegally wager on Mr. Deckelbaum's life.

d. Falsely declaring in the Application that the "statements and answers made in all parts of this application [were] full, complete, and true to the best of my (our) knowledge and belief." Instead, the stranger entities acting together to generate the Policy knew and intended for their statements, answers, and representations to be false and misleading, and otherwise concealed the truth from Protective Life.

25. Upon information and belief, as part of the illegal wagering scheme, the stranger entities acting together to generate the Policy misrepresented and otherwise concealed from Protective Life that, from the outset, the Policy was intended to be transferred to a different owner with no insurable interest in the insured.

26. The identity of the true owner and beneficiary of the Policy was, therefore, continually concealed from Protective Life.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT – ILLEGAL HUMAN LIFE WAGERING CONTRACT

### (AGAINST DEFENDANT WELLS FARGO BANK, N.A., AS SECURITIES INTERMEDIARY)

27. Protective Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

28. The Policy was applied for and signed in Delaware by a Delaware statutory trust, as owner and beneficiary of the Policy. The Policy was issued for delivery to that Delaware statotury Trust, as owner, care of its Delaware corporate trustees at their address in Wilmngton, Delaware. The Policy was then delivered to the trustee of the Trust, Wilmington Trust Company, a Delaware company with offices in Wilmington, Delaware who formally accepted the Policy at its offices in Wilmington, Delaware. The Policy is governed by Delaware law.

29. The Delaware Constitution provides that "[a]ll forms of gambling are prohibited in this State except [those explicitly set forth in the statute]." Del. Const. Art. II, § 17. Moreover, the Delaware Supreme Court has addressed the issues associated with life insurance policies used to wager on the death of insureds and has held that, under Delaware law, such policies are mere wagering contracts and are void *ab initio*. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011).

30. As set forth herein, the Policy was, from the outset, procured by third parties and intended as a wager on the life of Mr. Deckelbaum. Whether Mr. Deckelbaum knew the details of this scheme or his identity was merely used as an instrumentality to procure the Policy, stranger investors were wagering on Mr. Deckelbaum's life and hoping to trigger a secondary market cash-in on the Policy's $2 million death benefit.

31. Accordingly, Protective Life seeks, and is entitled to, a declaratory judgment that the Policy was an illegal wagering contract that violated the Delaware Constitution and the public policy of Delaware, thus rendering the Policy void *ab initio*, meaning that the Policy never came into existence.

## SECOND CAUSE OF ACTION

## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

### (AGAINST DEFENDANT WELLS FARGO BANK, N.A., AS SECURITIES INTERMEDIARY)

32. Protective Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

33. The Policy was intentionally structured to be a "trust-owned insurance policy" as defined by Delaware's insurable interest statute, 18 Del. C. § 2704(e)(4). Because the Policy was delivered to the place of business of the trustee of the Trust, Wilmington Trust Company, at its offices in Wilmington, Delaware, the existence of an insurable interest "shall be governed by [Delaware's insurable interest statute] without regard to [the] insured's state of residency or location." 18 Del. C. § 2704(g).

34. Under Delaware law, a valid and legitimate insurance trust can have a valid insurable interest in the life of the insured. *See* Del. C. § 2704(c)(5).

35. However, because the Trust was an illegitimate cover for the wager on Mr. Deckelbaum's life, the Trust lacked any insurable interest in the life of Mr. Deckelbaum. Accordingly, no insurable interest existed at the time of issuance of the Policy, and the Policy is void *ab initio* for lack of insurable interest.

36. Additionally, the Policy was applied for and issued at the behest of individuals or entities—with no insurable interest in the life of the insured—who

procured the Policy for the purpose of benefitting stranger investors in the life insurance secondary market. Accordingly, the Policy is void *ab initio* for lack of an insurable interest.

37. Therefore, Protective Life seeks, and is entitled to, a declaratory judgment that the Policy lacked insurable interest because it was procured by and for the benefit of strangers without any insurable interest under Delaware law.

38. WHEREFORE, Protective Life respectfully requests the entry of an Order by this Court as follows:

A. Declaring that the Policy is void *ab initio* due to it having been procured as a wagering contract on the life of Mr. Deckelbaum;

B. Declaring that the Policy is void *ab initio* due to it having been procured without a valid insurable interest at inception;

C. Declaring that because the Policy is void *ab initio* it never existed and Protective Life need not pay the death benefit;

D. Declaring that because the Policy is void *ab initio* the Court will leave the parties to this illegal contract as it finds them, thus permitting Protective Life to retain the premiums paid on the Policy, or, in the alternative, declaring that Protective Life may retain some of all of the premiums paid on the Policy to effectuate an offset with respect to Protective Life's costs and losses associated with the Policy;

E.    Awarding Protective Life attorneys' fees and costs associated with bringing this lawsuit, as determined by the Court; and

F.    Awarding Protective Life any further relief this Court deems appropriate.

Dated:  July 31, 2019                    Respectfully submitted,

/s/ *Chad E. Kurtz*
COZEN O'CONNOR
Chad E. Kurtz (ID No. 1016934)
1200 19th Street, NW
3rd Floor
Washington, D.C. 20036

Michael J. Miller (*pro hac vice to be filed*)
Joseph Kelleher (*pro hac vice to be filed*)
Chase A. Howard (*pro hac vice to be filed*)
1650 Market St., Suite 2800
Philadelphia, PA 19103
Tel. (215) 665-2147

*Attorneys for Plaintiff,*
*Protective Life Insurance Company*